DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Third Party Defendants/Appellants, Louis Foster and family have appealed from the decision of the Summit County Court of Common Pleas that granted summary judgment in favor of Plaintiff/Appellee Cincinnati Insurance Company ("CIC"). This Court affirms.
 I {¶ 2} The instant appeal arises from an automobile accident which occurred on October 6, 2000. The accident was the result of Brent Zupancic's failure to yield at a stop sign, whereupon he collided with the vehicle driven by Foster. Foster was ejected from the vehicle and rendered a quadriplegic. At the time of the accident, Zupancic was operating a blue pickup truck owned by Donzell's Flower and Garden Center, Inc. ("DFGC").
 {¶ 3} Four separate actions were instituted in the Summit County Court of Common Pleas stemming from this accident. In Summit County Common Pleas Case No. CV-2001-01-039, Appellants brought a personal injury action against Zupancic, Zupancic's employer Samuel Donzelli ("Donzelli"), dba Bonnie Oaks Farm, Bonnie Oaks Farm, and DFGC. In Case No. CV-2001-01-0235, CIC[1] filed a declaratory judgment action against Zupancic seeking a declaration that it owed him neither a defense nor indemnity. In Case No. CV-2002-02-0763, Appellants filed a Scott-Pontzer uninsured/underinsured motorist claim against Westfield Insurance Company. These actions resulted in a settlement agreement in which CIC agreed to pay Appellants $4.75 million under the CIC policies issued to Donzelli's business entities. As a result of this settlement the parties dismissed the cases above mentioned with prejudice.
 {¶ 4} In Case No. CV-2002-02-0888, the subject of the instant appeal, CIC filed a declaratory judgment action seeking a declaration that CIC did not owe Donzelli a defense nor indemnity under his personal homeowner's, automobile or umbrella policies. Donzelli filed an action against Appellants who in turn counterclaimed seeking a declaratory judgment that Zupancic and Donzelli were entitled to indemnity under Donzelli's personal umbrella policy. Following cross motions for summary judgment, the trial court entered summary judgment in favor of CIC on April 21, 2005. The trial court determined that the vehicle Zupancic was driving at the time of the accident was not an insured vehicle, nor was Zupancic an insured driver under Donzelli's personal umbrella policy.
 {¶ 5} Appellants timely appealed, asserting three assignments of error.
 II {¶ 6} On appeal, Appellants have challenged the trial court's award of summary judgment in favor of CIC. An appellate court reviews the award of summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12,467 N.E.2d 1378, certiorari denied (1986), 479 U.S. 948, 107 S.Ct. 433,93 L.Ed.2d 383. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293.
 Assignment of Error Number One
"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY INCORPORATING THE TERMS OF ANOTHER POLICY OF INSURANCE INTO THE CIC UMBRELLA POLICY, THUS TREATING THE UMBRELLA POLICY AS A STANDARD EXCESS POLICY RATHER THAN A STAND-ALONE POLICY OF INSURANCE THAT IS INTENDED TO FILL IN GAPS OF COVERAGE OMITTED IN A PRIMARY POLICY."
 {¶ 7} In their first assignment of error, Appellants have argued that the trial court committed reversible error when it treated Donzelli's personal umbrella policy as a standard excess policy rather than a stand-alone "gap filling" policy. Specifically, Appellants have argued that the trial court committed this error by ignoring the four corners of the umbrella policy in determining whether Zupancic was an insured and instead, looking to the terms and definitions contained in the primary automobile insurance policy. Appellants have argued that the trial court's incorporation of the definition and requirements for "covered autos" under the primary auto policy into the umbrella policy constituted reversible error. We disagree.
 {¶ 8} When interpreting an insurance contract, this Court must look to the plain and ordinary meaning of the language unless another meaning is apparent from the contents of the policy. Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849 at ¶ 11. This Court has held that a contract for insurance "must be given a fair and reasonable interpretation to cover the risks anticipated by the parties." Boxler v. AllstateIns. Co. (Feb. 27, 1991), 9th Dist. No. 14752, at 7. Furthermore, "[w]hen the intent of the parties is evident from the clear and unambiguous language in the provision, the plain language of the provision must be applied." Rybacki v. AllstateIns. Co., 9th Dist. No. 03CA0079-M, 2004-Ohio-2116 at ¶ 9, citing Karabin v. State Auto Mut. Ins. Co. (1984),10 Ohio St.3d 163.
 {¶ 9} In the instant matter, we find that the plain language of the umbrella policy is clear and that the terms of the contract require the incorporation of the underlying automobile policy. Subsection 5.d(6) of Part II of the umbrella policy specifically defines who are not insureds for occurrences caused by the use of automobiles. The policy states in pertinent part:
"The following are not insureds:
"(6) The owner or lessee (other than the named insured) of a borrowed, leased or rented automobile or their agent's and employees, unless such liability is covered by a basic policy
and then only for such hazards for which coverage is afforded under such basic policy." (Emphasis in original).
The umbrella policy further defines "basic policy" as "a policy or policies listed in the Declarations (including renewals or replacements) which provides liability coverage for personal injury or property damage because of an occurrence. Therefore, it is evident that in order to determine whether a person is an insured one must look to the basic policy. Accordingly, Appellants' first assignment of error lacks merit.
 Assignment of Error Number Two
"THE TRIAL COURT ERRED IN GRANTING CIC'S MOTION FOR SUMMARY JUDGMENT AND IN FAILING TO GRANT THE FOSTER'S MOTION FOR SUMMARY JUDGMENT WHERE THE TORTFEASOR FALLS WITHIN THE DEFINITION OF AN INSURED UNDER THE UMBRELLA POLICY."
 {¶ 10} In their second assignment of error, Appellants have argued that the trial court committed reversible error when it granted summary judgment in favor of CIC. Specifically, Appellants have argued that the tortfeasor, Zupancic, is an insured under the umbrella policy and therefore the trial court should have granted summary judgment on their behalf. We disagree.
 {¶ 11} We begin the analysis by noting that Donzelli's personal umbrella policy does not cover personal injury or property damage arising out of business activities. The policy states in its business exclusion that "[w]e will not cover personal injury or property damage arising out of business or business property unless covered under one or more of the basic policies." (Emphasis omitted). The policy defines "business" as including, but not limited to "a trade, occupation, profession or other activity engaged in as a means of livelihood or from which you or a relative intend to derive income (other than farming)."
 {¶ 12} It is clear to this Court that even if we found Zupancic to be an insured in that he was driving the blue DFGC pickup truck at his employer's direction or for the intended purpose of benefiting DFGC, the umbrella policy would preclude coverage for an accident arising from such business activity. Appellants have argued that the language "other than farming" creates an exception to the business exclusion. Even if Appellants' argument is meritorious, the exception would not apply in the instant case.
 {¶ 13} The vehicle involved in the accident was owned by DFGC, a non-farming operation. DFGC is a commercial flower and garden retailer, and is a separate legal entity from Bonnie Oaks Farm ("BOF"). Appellants cannot have it both ways. They ask this Court to impute liability to Donzelli personally by arguing that Zupancic was using the truck for its intended purpose of benefiting DFGC, yet when faced with the business exclusion, they attempt to argue that the accident did not arise from that business, but from the business of BOF. This we decline to do. The record is clear that while Zupancic was an employee of BOF, he was not using the blue DFGC truck to conduct the business of BOF. Accordingly, because the business exclusion precludes coverage, summary judgment was proper.
 {¶ 14} In the alternative, even if the business exclusion did not apply, we still find that summary judgment was proper because Zupancic was not an insured under the personal umbrella policy. Subsection 5.d(5) of the personal umbrella policy defines an insured as "[a]ny other person or organization legally responsible for the use of an automobile if it is used by you or with your permission. But the use has to be for the intended purpose." (Emphasis omitted). Appellants have construed this section to mean that an insured must have permission to use the vehicle from the person listed on the Declaration page, must be legally responsible for use of the automobile, and must be using the automobile for its intended purpose. While we agree with Appellants' interpretation of the clause, we disagree with its application with respect to Zupancic.
 {¶ 15} We find that Appellants have failed to demonstrate that Zupancic qualifies under each prong of the proffered interpretation of subsection 5.d(5). While Appellants have stated "without question" Zupancic was a person who was legally responsible for the use of the pickup truck solely because he was driving it, Appellants have cited no corroborating case law to substantiate this assertion. Conversely, CIC has cited the Ohio State Supreme Court case of Moyer v. Aron (1964),175 Ohio St. 490, for the proposition that Ohio courts construe the language "legally responsible for the use" as regarding ownership, not actual use of the vehicle.
 {¶ 16} In Aron, a customer was permitted by the auto dealership to test drive a vehicle. During the test drive, Aron collided with a bicycle, killing its rider. Aron was a licensed driver, with the explicit permission of the owner to use the vehicle for the specific purpose of a test drive. The dealership's policy insured "any other person or organization legally responsible for the use" of such automobile. The Court held that Aron was not an insured under the policy, in that he did not fit into any of the enumerated categories of insureds. Specifically, the Court's decision substantiated the position that the simple fact that Aron was driving the vehicle did not per se make him "legally responsible for the use thereof" and therefore an insured under the policy.
 {¶ 17} In Davidson v. Chulka (Sep. 21, 1978), 8th Dist. No. 37662, 1978 WL 218144, the Eighth District reviewed similar "legally responsible for the use" language. The Court, relying onAron, held that the policy did not cover the driver of the borrowed vehicle even though the person was using and physically operating the vehicle at the time of the accident. Id. at *5. Therefore, it is the conclusion of this Court that the language "legally responsible for the use" of the insured's vehicle does not necessarily equate to any person who happens to be driving the vehicle. We find that such language denotes ownership, as the owner of the vehicle is ultimately and primarily legally responsible for the use of the vehicle.
 {¶ 18} Assuming arguendo, that Zupancic could be construed as a person legally responsible for the use of the blue DFGC truck, this Court finds that the truck was not being used for its intended purpose and thus fails to meet the third requirement of subsection 5.d(5). The record reveals the following sequence of events transpired on October 6, 2000.
 {¶ 19} Zupancic, an employee of BOF, was working at the farm. His vehicle had broken down and he was without transportation to and from work. Sometime in the early afternoon, before leaving to make a delivery at DFGC, Zupancic had a conversation with his supervisor, Mark Frantum. During the conversation, Zupancic told Frantum that his normal ride home would be gone by the time Zupancic returned to BOF from his scheduled delivery. Zupancic then asked if he could take a pickup truck home. There is some discrepancy in the record whether Zupancic specifically requested the blue DFGC pickup truck, but the record is clear that Zupancic requested the use of a pickup truck and that Frantum told him explicitly that it "was not a good idea."
 {¶ 20} Frantum testified he told Zupancic that after the delivery, he should leave the brown BOF box truck[2] at DFGC and either walk or obtain a ride home from DFGC.[3]
Zupancic testified that Frantum told him to take the brown BOF box truck home instead of leaving it at DFGC. Regardless of the discrepancy regarding the brown box truck, the record is clear that Zupancic was told to use the brown BOF box truck and not to use the pickup truck.
 {¶ 21} Zupancic drove the brown BOF box truck to DFGC to make his delivery arriving at approximately 4:00 p.m. Zupancic then unloaded the truck which took approximately 30 minutes. After unloading the truck, Zupancic attempted to contact his mother for a ride home, but the line was busy. While at DFGC, DFGC's delivery driver, Bruce Holcomb, offered Zupancic a ride home. Zupancic turned down the offer. Then, although he had discussed an alternate plan with Frantum,[4] Zupancic returned the brown BOF box truck to the farm. Zupancic clocked out at approximately 4:45 p.m. While at BOF, Zupancic again tried to phone his mother for a ride home, but the line was busy. Sometime after 5:00 p.m., Zupancic decided, of his own volition, to take the blue DFGC truck back to the garden center.[5] En route, Zupancic collided with Foster.
 {¶ 22} Appellants have argued that Zupancic was simply returning the blue pickup to DFGC and that his being closer to home at the end of the day was simply an incidental benefit. We do not find this argument persuasive. The evidence shows that regardless of any policies regarding co-mingling company vehicles or the use of company vehicles for personal reasons, Zupancic had been explicitly told by Frantum not to take any pickup trucks home that day and had in fact made arrangements to use the BOF box truck to facilitate his getting home. Zupancic had not been asked by anybody to drive the blue DFGC pickup truck to the garden center. The record is clear that Zupancic was not pursuing BOF's business at the time of the accident. In fact, Zupancic had clocked out for the day. In light of the record we find that Zupancic was not using the blue DFGC pickup truck for its intended purpose, but was using it as a means to get home.
 {¶ 23} Therefore, because the business exclusion would preclude liability to Donzelli personally for injury arising from his business ventures, and because Zupancic did not meet the requirements of an insured under subsection 5.d(5), we find that summary judgment was proper.
 {¶ 24} Appellants' second assignment of error lacks merit.
 Assignment of Error Number Three
"THE TRIAL COURT ERRED IN GRANTING CIC'S MOTION FOR SUMMARY JUDGMENT, WHERE, AT THE LEAST, A FACT QUESTION REMAINS AS TO WHETHER THE TORTFEASOR HAD IMPLIED PERMISSION FROM THE NAMED INSURED TO DRIVE THE TRUCK."
 {¶ 25} In their third assignment of error, Appellants have argued that the trial court erred in granting summary judgment where a question of fact remained pertaining to whether Zupancic had implied permission from the named insured to drive the blue pickup truck. We disagree.
 {¶ 26} The issue of permission with respect to the personal umbrella policy is only applicable when determining whether Zupancic was an insured under subsection 5.d(5). As stated above, this Court finds that Zupancic has failed to meet two of the three requirements necessary to be an insured under the subsection 5.d(5) and therefore, whether he had permission, implied or otherwise, to use the blue DFGC pickup truck is immaterial.
 {¶ 27} Appellant's third assignment of error lacks merit.
 III {¶ 28} Based on a careful review of the record, we find that there existed no genuine issue of material fact and that Appellee was entitled to judgment as a matter of law. We conclude that reasonable minds can come to but one conclusion and that conclusion is adverse to Appellant, that party being entitled to have the evidence construed most strongly in their favor. Accordingly, Appellants' three assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Slaby, P.J. concurs.
Carr, J. concurs in judgment only.
[1] At all times relevant to this appeal, CIC insured Samuel Donzelli personally as well as Donzelli's business entities.
[2] A "box truck" has a separate, box like cargo area that sits on the frame. Most box trucks have a roll-up rear door that operates like a garage door. A pickup truck has an open "bed" that sits on the frame as opposed to an enclosed box. The bed is accessible by a downward swinging "tailgate."
[3] Zupancic lived much closer to DFGC than he did to BOF.
[4] Zupancic and Frantum both testified that they had decided that Zupancic would make his delivery to DFGC using the brown BOF box truck. After completing the delivery, Zupancic would call Frantum, tell him the job was done, and Frantum would clock Zupancic out. While there is a discrepancy whether Zupancic was supposed to park the brown BOF box truck at DFGC and find his own way home or whether he was allowed to drive the brown BOF box truck home, it is readily apparent that the pre-arranged plan alleviated Zupancic's need to return to BOF for the purpose of clocking out.
[5] The record is unclear whether Zupancic was taking the blue pickup to his house or simply back to DFGC, where he would drop it off and find some other way home. Zupancic testified that he saw the blue DFGC truck and "figured [he would] drive that into Donzell's." However, later in his testimony, while discussing the route he took, Zupancic stated that he "wasn't in a hurry," that "[i]t was the weekend," and that he was just "going home a different way."